UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES – GENERAL**       'O'

| Case No. | 2:13-CR-00237-CAS-2 | Date | May 14, 2021 |
|---|---|---|---|
| Present: The Honorable | CHRISTINA A. SNYDER | | |
| Interpreter | N/A | | |

| Catherine Jeang | Not Present | Juan Rodriguez, Not Present |
|---|---|---|
| *Deputy Clerk* | *Court Reporter/Recorder, Tape No.* | *Assistant U.S. Attorney* |

| U.S.A. v. Defendant(s): | Present | Cust. | Bond | Attorneys for Defendants: | Present | App. | Ret. |
|---|---|---|---|---|---|---|---|
| MANUEL AMADOR CASTILLO | NOT | X | | IJEOMA EKE, DFPD | NOT | | X |

**Proceedings:** (IN CHAMBERS) – MOTION FOR COMPASSIONATE RELEASE PURSUANT TO 18 U.S.C. § 3582(c)(1) (Under Seal, Dkt. 104, filed on March 19, 2021)

The Court finds this motion appropriate for decision without further oral argument. See Fed. R. Civ. P. 78; C.D. Cal. L.R. 7-15. Accordingly, the matter is hereby taken under submission.

## I. INTRODUCTION

Defendant Manuel Amador Castillo is currently serving a 120-month sentence in the custody of the Bureau of Prisons ("BOP") at Federal Correctional Institute ("FCI") Safford for distribution of controlled substances. His projected release date is December 7, 2024. As of the date of this order, defendant has served roughly 60% of his 120-month sentence.

On March 19, 2021, defendant, represented by the Federal Public Defender's Office ("FPD"), filed the instant motion to reduce his term of imprisonment pursuant to 18 U.S.C. § 3582(c)(1) ("Section 3582") based on an outbreak of COVID-19 at FCI Safford, and his contraction of the disease. Dkt. 104 ("Mot.").[1] The government filed an opposition on April 2, 2021. Dkt. 109 ("Opp."). However, April 12, 2021, the government filed a notice with the Court in which the government acknowledged that it was forced to abandon some of its arguments in

---

[1] On March 19, 2021, defendant also filed an *ex parte* application to shorten time on his Motion, dkt. 99, which the Court granted, dkt. 101.

light of the Ninth Circuit's ruling in United States v. Aruda, No. 20-10245, 2021 WL 1307884 (9th Cir. Apr. 8, 2021) ("Aruda"). Dkt. 112. Defendant filed a reply on April 15, 2021. Dkt. 116 ("Reply").

The Court held a hearing on defendant's motion on April 19, 2021. At the hearing, the Court requested supplemental documentation of defendant's medical conditions, which defendant submitted on May 3, 2021. Dkt. 121.

Having carefully considered the parties' arguments and submissions, the Court finds and concludes as follows.

## II.   BACKGROUND

### A. Defendant's Underlying Offenses and Conviction

Defendant was arrested in April 2013, and indicted for conspiracy to distribute at least 50 grams of methamphetamine in violation of 21 U.S.C. § 846; two counts of distribution of at least 50 grams of methamphetamine in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A)(viii) and 18 U.S.C. § 2(a); and two counts of distribution of at least 50 grams of methamphetamine within 1,000 feet of a school in violation of 21 U.S.C. § 860(a) and 18 U.S.C. § 2(a). Dkt. 1 (indictment). According to the Presentence Investigation Report, defendant participated in two drug deliveries at the behest of his aunt. Dkt. 82, Presentence Investigation Report ("PSR") ¶ 28. Defendant contended he participated out of fear and familial obligation, and did not expect to profit from the distributions. Id. According to the PSR, defendant's aunt was involved with the Mexican Mafia as a facilitator of that gang's criminal activity. Id. ¶¶ 13–14, 28. On January 26, 2015, defendant pled guilty to all five counts of the indictment. Dkt. 57.

At the time of his conviction, defendant had a criminal history category of IV based on prior convictions for misdemeanor receiving known stolen property, and felony extortion. PSR ¶¶ 51–52, 55. According to the government, defendant committed the felony extortion while on probation. Opp. at 2.

On February 22, 2016, this Court sentenced defendant to 120 months incarceration followed by a term of 10 years' supervised release. Dkt. 88 (judgment and commitment order). This reflected the mandatory minimum. PSR ¶ 88; see 21 U.S.C. §§ 841(b)(1)(A), 860(a). Based in part on his criminal history category, the guideline imprisonment range was 121 to 151 months. PSR ¶ 89.

### B. Outbreak of COVID-19 and Defendant's Illness

Defendant has been diagnosed with severe obesity, asthma, sinusitis, hyperlipidemia, gallbladder disease, and edema, among other conditions. Mot. at 2. Severe obesity is defined as having a body mass index ("BMI") above 40kg/m$^2$. CDC, COVID-19: People with Certain Medical Conditions, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fneed-extra-precautions%2Fgroups-at-higher-risk.html (last visited May 13, 2021). Defendant's BMI is 51.3 kg/m$^2$. Mot. at 3. Furthermore, defendant is prescribed an inhaler for his asthma, which he reports using three times a day for shortness of breath. Id. Defendant also reports having increasingly severe asthmatic symptoms which he attributes to a change in his medication and to the environment at FCI Safford. Id. Defendant has also experienced severe chest pains for which a doctor ordered an electrocardiogram ("EKG") on March 5, 2021. Id. at 4; Mot., Exh. I. According to defendant, the EKG "showed damage to his heart." Reply at 5. The supplemental medical records submitted by defendant document elevated blood pressure; "chronic chest pain complaints," and "intermittent chest pain"; and an "abnormal" EKG. Dkt. 121-1, Exh. R at 5, 7.

According to the Centers for Disease Control and Prevention ("CDC"), obesity "can make [someone] more likely to get severely ill from COVID-19." CDC, People with Certain Medical Conditions. The CDC notes that "[t]he risk of severe COVID-19 illness increases sharply with elevated BMI." Id. The CDC also reports that chronic lung disease, including moderate to severe asthma, can increase the risk of severe illness from COVID-19. Id.

On December 30, 2020, defendant tested positive for COVID-19. Opp. at 3. On January 5, 2021, defendant refused BOP medical staff's recommendation that he be transferred to a local hospital for treatment. Dkt. 109-1, Declaration of Juan M. Rodriguez ("Rodriguez Decl."), Exh. 4 (medical treatment refusal statement). (Defendant contends BOP medical staff refused to call an ambulance or provide him with a wheelchair to leave the facility, and that he therefore had no choice but to sign the refusal statement. Reply at 3.) A day later, on January 6, 2021, defendant was admitted to the hospital "with COVID-19 pneumonia." Mot., Exh. M ("Discharge Summary"). According to the Discharge Summary, defendant "was hypoxic and required supplemental oxygen." Id. After treatment, defendant apparently "did really well during the hospital stay without any major complications." Id. Defendant, though, reports that he still experiences COVID-19 symptoms, including difficulty breathing and pain in his lungs. Mot. at 3–4. Defendant argues these symptoms are consistent with so-called "long COVID-19," which is characterized by lingering symptoms following contraction of the virus. Reply at 4; see Anthony Kormaroff, The Tragedy of Long COVID, Harvard Health Publ'g, https://www.health.harvard.edu/blog/the-tragedy-of-the-post-covid-long-haulers-2020101521173 (last visited May 13, 2021) ("Tens of thousands of people in the United States

have lingering illness following COVID-19. … Currently, the condition they are suffering from is known as 'long COVID[.]'").

Currently at FCI Safford, the BOP reports that no inmates or staff are infected with COVID-19. BOP, COVID-19: Coronavirus, https://www.bop.gov/coronavirus/ (last visited May 13, 2021). FCI Safford currently houses 789 total inmates. BOP, FCI Safford, https://www.bop.gov/locations/institutions/saf/ (last visited May 13, 2021).

Defendant submitted a request for compassionate release to the warden of FCI Safford on November 22, 2020, and received a denial on November 27, 2020. Mot. at 2; see Mot., Exh. A (denial letter). Defendant now requests this Court reduce his sentence to time served pursuant to Section 3582(c)(1)(A) on the grounds that the outbreak of COVID-19 at FCI Safford and defendant's medical conditions constitute extraordinary and compelling reasons warranting a sentence reduction. Mot. at 1–2.

### III. LEGAL STANDARD

"A judgment of conviction that includes a sentence of imprisonment constitutes a final judgment and may not be modified by a district court except in limited circumstances." Dillon v. United States, 560 U.S. 817, 824 (2010) (alterations omitted). "Compassionate release provides an exception" to this general rule "in extraordinary cases." United States v. Holden, No. 3:13-cr-00444-BR, 2020 WL 1673440, at *2 (D. Or. Apr. 6, 2020).

Prior to December 21, 2018, "the Court could only reduce a sentence of imprisonment upon a motion of the Director of the Bureau of Prisons[.]" United States v. Esparza, No. 1:07-cr-00294-BLW, 2020 WL 1696084, at *1 n.1 (D. Idaho Apr. 7, 2020). But on December 21, 2018, Congress enacted—and the President signed into law—the First Step Act of 2018 ("the FSA"), "with the intent of 'increasing the use and transparency of compassionate release.'" United States v. Willis, 382 F. Supp. 3d 1185, 1187 (D.N.M. 2019). Accordingly, the FSA now "permits defendants to bring their own motions for compassionate release after first exhausting their administrative remedies with the Bureau of Prisons." United States v. Ayon-Nunez, No. 1:16-cr-00130-DAD, 2020 WL 704785, at *2 (E.D. Cal. Feb. 12, 2020). "Although relief under the statute is commonly referred to as 'compassionate release,' such relief is not limited to immediate release, but includes a reduction in sentence." United States v. Marks, No. 03-cr-06033-L, 2020 WL 1908911, at *3 n.3 (W.D.N.Y. Apr. 20, 2020).

"Compassionate release is governed by 18 U.S.C. § 3582(c)." Willis, 382 F. Supp. 3d at 1187. The FSA modified Section 3582(c)(1)(A)(i) to allow for compassionate release when three requirements are met: "First, as a threshold matter, the statute requires defendants to exhaust administrative remedies. Second, a district court may grant compassionate release only if

'extraordinary and compelling reasons warrant such a reduction' and 'such reduction is consistent with applicable policy statements issued by the Sentencing Commission.' Third, the district court must also consider 'the factors set forth in Section 3553(a) to the extent they are applicable.'" United States v. Rodriguez, 424 F. Supp. 3d 674, 680 (N.D. Cal. 2019) (quoting 18 U.S.C. § 3582(c)(1)(A)(i)); see 18 U.S.C. § 3553(a) ("Section 3553(a)"). The FSA "grants broad discretion to the district courts in providing relief[.]" Jones v. United States, No. 4:98-cr-10-01, 2020 WL 219311, at *3 (E.D. Va. Jan. 6, 2020).

## IV. DISCUSSION

### A. Exhaustion of Administrative Remedies

The Court "may entertain an inmate's request for compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i) only (1) 'after he has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion' on his behalf or (2) after 'the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier.'" United States v. Cooper, No. 2:14-cr-00228-JAD-CWH, 2020 WL 2064066, at *2 (D. Nev. Apr. 29, 2020) (alterations omitted) (quoting 18 U.S.C. § 3582(c)(1)(A)). In addition, "[e]xhaustion occurs when the BOP denies a defendant's application[.]" United States v. Mondaca, No. 89-cr-00655-DMS, 2020 WL 1029024, at *2 (S.D. Cal. Mar. 3, 2020) (citation omitted).

Here, defendant contends that he has exhausted his administrative remedies because his request for compassionate release was denied by the warden of FCI Safford on November 27, 2020. Mot. at 10; see Mot., Exh. A (denial letter). The government concedes that defendant has exhausted his administrative remedies. Opp. at 4. Accordingly, the Court finds that defendant has satisfied the exhaustion requirement.[2]

### B. Extraordinary and Compelling Reasons

Section 3582(c) "provides a path for defendants in 'extraordinary and compelling circumstances' to be released from prison early." Rodriguez, 424 F. Supp. 3d at 681 (quoting 18 U.S.C. § 3582(c)(1)(A)). A number of district courts have determined that "extraordinary and compelling" reasons for compassionate release exist "when the prisoner suffers from preexisting

---

[2] Although defendant's original request to the warden for compassionate release preceded defendant's diagnosis with COVID-19, it appears that this request is sufficient for purposes of exhaustion because the instant motion arises from the same fear that he might suffer severe illness if infected, and, in any event, the government does not raise any objection.

health conditions that might make a COVID-19 infection more lethal." United States v. O'Neil, No. 3:11-cr-00017, 2020 WL 2892236, at *6 (S.D. Iowa June 2, 2020). The defendant bears the initial burden to put forward evidence that establishes an entitlement to a sentence reduction. United States v. Sprague, 135 F.3d 1301, 1306–07 (9th Cir. 1998).[3]

Here, defendant contends that, taken together, his medical conditions and the outbreak of COVID-19 at FCI Safford constitute extraordinary and compelling reasons for a sentence reduction pursuant to Section 3582(c)(1). Mot. at 10. Specifically, defendant notes that he is severely obese, which the CDC reports may increase the risk of severe illness from COVID-19. Id. at 11. Defendant cites to an article, published in Science Magazine, which, among other things, reports that "people with obesity who contracted SARS-CoV-2 were 113% more likely than people of healthy weight to land in the hospital, 74% more likely to be admitted to an ICU [intensive care unit], and 48% more likely to die." Meredith Wadman, Why COVID-19 is more deadly in people with obesity—even if they're young, Science Magazine, https://www.sciencemag.org/news/2020/09/why-covid-19-more-deadly-people-obesity-even-iftheyre-young (Sept. 8, 2020). Defendant also notes that, according to the CDC, moderate to severe asthma may increase the risk of severe illness from COVID-19. Mot. at 11. (Defendant does not specify, and the medical records do not make immediately apparent, whether defendant has moderate to severe asthma.)

Defendant further argues that he is at risk of reinfection from COVID-19. Id. at 14. Defendant contends that there is no evidence that those who contract COVID-19 are immune from contracting the virus again in the future, especially when they initially had only mild symptoms. Id. Defendant argues that, if he were to contract COVID-19 a second time, "his risk of life-long complications from the virus is higher because of his chronic asthma, as it puts him at higher risk of having a serious case and being put on a ventilator, which in turn increases the risk of a lung injury, scarring, and lasting, debilitating effects." Id. at 13.

---

[3] The parties initially disputed whether the Sentencing Commission's Sentencing Guidelines Manual, U.S.S.G. § 1B1.13, was binding on this Court as an "applicable policy statement[]" under Section 3582(c)(1)(A)(i). The Ninth Circuit has now held that "the current version of U.S.S.G. § 1B1.13 is not an 'applicable policy statement[ ]' for 18 U.S.C. § 3582(c)(1)(A) motions filed by a defendant." United States v. Aruda, No. 20-10245, 2021 WL 1307884, at *4 (9th Cir. Apr. 8, 2021). Accordingly, the criteria for finding extraordinary and compelling reasons for release under U.S.S.G. § 1B1.13 are not binding here.

The government "does not contest that defendant has shown an 'extraordinary and compelling' medical reason for release." Opp. at 10 n.1.

"District courts within the Ninth Circuit have recognized obesity greatly increases the risk of serious COVID-19 complications and have granted motions for compassionate release" based on a defendant's obesity. United States v. Ortiz, No. 2:15-cr-00124 KJM, 2021 WL 1089949, at *3 (E.D. Cal. Mar. 22, 2021); see United States v. Richardson, No. 2:17-00048, 2020 WL 3402410, at *3 (E.D. Cal. June 19, 2020) (defendant with BMI of 38 qualified for compassionate release because "obesity alone" places a defendant "at higher risk of COVID-19 complications"). In the context of the risk of COVID-19, courts also find that the comorbidity of asthma and obesity constitutes an extraordinary and compelling reason for release. See United States v. Miles, No. 2:17-cr-00127-KJM, 2020 WL 7646415, at *4 (E.D. Cal. Dec. 23, 2020) (finding comorbidity of asthma and obesity constituted extraordinary and compelling reason); United States v. Rodriguez, 476 F. Supp. 3d 1071, 1074 (S.D. Cal. 2020) (finding "combination of obesity, asthma, and major depressive disorder present extraordinary and compelling reasons"). The Court therefore finds sufficient support for the parties' contention that defendant's comorbidity of obesity and asthma, in combination with the threat of COVID-19, constitutes an extraordinary and compelling reason for release.[4]

### C. Danger to the Community

Previously, courts had concluded that, "[e]ven where extraordinary and compelling reasons exist," courts "must consider whether the defendant is 'a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g).'" Mondaca, 2020 WL 1029024, at *3 (quoting U.S.S.G. § 1B1.13(2)). Courts reached this conclusion based on application of the Sentencing Commission's Sentencing Guidelines Manual, U.S.S.G. § 1B1.13, which some courts considered an "applicable policy statement[]" as defined in Section 3582. See 18 U.S.C. § 3582(c)(1)(A)(i). To determine whether a defendant posed a danger to the community, courts considered a number of factors "including, among other things: (1) the nature and circumstances of the offense charged; (2) the history and characteristics of the person, including character, physical and mental condition, family ties, employment, financial resources, past conduct, criminal history, and drug and alcohol abuse; and (3) the nature and seriousness of the danger to

---

[4] Because the government concedes that defendant has met the extraordinary and compelling reason requirement, the Court declines to address the question of whether defendant's prior contraction of and recovery from COVID-19 reduces the risk posed by his underlying health conditions.

any person or the community that release would impose." Mondaca, 2020 WL 1029024, at *3 (citing 18 U.S.C. § 3142(g)).

However, in Aruda, the Ninth Circuit held that the current version of U.S.S.G. § 1B1.13 is not binding on district courts when a defendant moves for compassionate release pursuant to Section 3582(c)(1)(A). Aruda, 2021 WL 1307884, at *4. Accordingly, it is no longer the case that the Court "must" consider whether a defendant poses a danger to the community. See id. at *2 ("This dangerousness finding is not statutorily required under 18 U.S.C. § 3582(c)(1)(A)(i), but is part of the Sentencing Commission's policy statement in U.S.S.G. § 1B1.13(2)."). Nevertheless, the Ninth Circuit also instructed that U.S.S.G. § 1B1.13 "may inform a district court's discretion for § 3582(c)(1)(A) motions[.]" Id. In any event, several of the factors enumerated in U.S.C. § 3142(g) overlap with those enumerated by Section 3553(a), as discussed below. Accordingly, the Court determines that it is appropriate to apply the parties' arguments regarding defendant's danger to the community to the relevant Section 3553(a) factors.

### D. Consistency with Section 3553(a) Factors

To the extent that defendant has otherwise satisfied Section 3582(c)'s requirements, the Court must further "consider the factors set forth in section 3553(a) to the extent they are applicable[.]" United States v. Redd, No. 1:97-cr-00006-AJT, 2020 WL 1248493, at *8 (E.D. Va. Mar. 16, 2020). These factors include: "the nature and circumstances of the offense and the history and characteristics of the defendant; the need for the sentence imposed; the kinds of sentences available; the kinds of sentence and the sentencing range established in the Guidelines; any pertinent policy statement issued by the Sentencing Commission; the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and the need to provide restitution to any victims." United States v. Carty, 520 F.3d 984, 991 (9th Cir. 2008) (*en banc*) (citing 18 U.S.C. § 3553(a)(1)–(7)).

Defendant argues that the Section 3553(a) factors weigh in favor of release because defendant has served a significant portion of his sentence, and defendant's medical needs cannot be met if incarcerated. Mot. at 17. Defendant further argues that he does not pose a danger to the community. He notes that, while incarcerated, he has completed courses in, among other things, "math, science, business, parenting and anger management[.]" Id. at 16. Furthermore, since September 2019, the BOP has apparently considered defendant to be "security classification low." Dkt. 116, Reply, Exh. P (inmate history). Defendant notes that the BOP transferred him from a medium security facility to FCI Safford, which is a low security facility. Id. Defendant also argues his release plan establishes that he is not a danger to the community. His release plan suggests that defendant be placed on supervised release for the remainder of his sentence. Id. Defendant avers he will reside with his mother in Hollywood, California. Id. He will apply for Medi-Cal with the assistance of the Social Services department of the FPD, and will work with

community-based organizations for support with mental and physical health needs, as well as life skills.  Id. at 16–17.  Defendant apparently has an employment offer from Stand Up USA, Inc., where defendant would work repairing wheelchairs.  Id. at 17.  Finally, defendant reports that his family is supportive and is willing to facilitate his transition from incarceration.  Id.; Mot., Exh. F (letters of support from family members and friends).

The government responds that the Section 3553(a) factors do not support defendant's request for early release.  Rather, the government argues that (1) the facts of the case do not warrant a reduction in defendant's sentence; (2) defendant fails to show that the BOP cannot manage the spread and treatment of COVID-19 at FCI Safford; (3) defendant's health conditions, on their own, are not dire; (4) the BOP's vaccination program should reduce the risk of re-infection; and (5) defendant has already contracted COVID-19 and is undergoing treatment at FCI Safford.  Opp. at 16–19.  The government further argues that defendant remains a danger to the community.  Id. at 13.  First, the government argues that defendant "has a clear disregard for the law" as evidenced by his two prior convictions, and the fact that he committed one while on probation.  Id.  The government further notes that, in August 2018, defendant was disciplined for being in possession of a prohibited substance—an opioid—while incarcerated.  Id.; see Rodriguez Decl., Exh. 3 (inmate disciplinary record).  The government also notes that the BOP concluded that defendant posed a high risk of recidivism based on the PATTERN assessment.[5]  Rodriguez Decl., Exh. 2 (inmate history).  (Defendant responds that the PATTERN assessment conflicts with defendant's classification as a low security risk, noted above, and should be disregarded.  Reply at 6.  However, "high risk recidivism level" appears to be a different metric than "security classification low"; therefore, it is not necessarily the case that these two classifications are contradictory.)  Finally, the government argues that the circumstances of his crimes of conviction reveal defendant poses a danger to the community.  Specifically, although defendant avers he participated in the drug distributions at issue at the behest of his aunt, defendant has not shown

---

[5] The Prisoner Assessment Tool Targeting Estimated Risk and Needs ("PATTERN") assessment was developed pursuant to the FSA.  See 18 U.S.C. § 3631(b).  According to the Department of Justice, it "is designed to predict the likelihood of general and violent recidivism for all BOP inmates."  DOJ, Department Of Justice Announces the Release of 3,100 Inmates Under First Step Act, Publishes Risk And Needs Assessment System, (July 19, 2019).  The assessment "contains static risk factors (e.g. age and crime of conviction) as well as dynamic items (i.e. participation or lack of participation in programs like education or drug treatment) that are associated with either an increase or a reduction in risk of recidivism."  Id.

that he was under duress. Opp. at 13. And the fact that he distributed methamphetamine within 1,000 feet of a school also indicates a threat to the community. Id.

On the one hand, defendant's counsel submits a post-release plan indicating that defendant would live with his mother, and includes several letters of support from friends and family members. Mondaca, 2020 WL 1029024, at *4 (fact that inmate "has numerous family ties, including family members who will provide for him," weighs in favor of release). Furthermore, his release plan states that defendant has an employment opportunity upon release. However, defendant committed a serious crime, he had previously committed a felony, and, if released, he would serve a sentence of incarceration well below the guidelines.

Considering these competing factors, the Court, at oral argument, requested additional documentation to support the contention that defendant suffered from "long COVID" or other medical conditions that would be treatable outside of prison but not inside. See 18 U.S.C. § 3553(a)(2)(D) (courts may consider "the need to provide the defendant with … medical care … in the most effective manner"). As noted above, the only concrete evidence of ongoing medical conditions that might necessitate treatment outside of prison is an "abnormal" EKG. But the Court cannot determine the significance of the EKG, nor what treatment it would necessitate, if any. Therefore, because defendant has already contracted and largely recovered from COVID-19, and in light of declining COVID-19 infection rates and the BOP's vaccination efforts, there appears to be no reason that defendant requires or is likely to require medical treatment outside of prison. As such, on balance, the Court finds that the Section 3553(a) factors do not favor release.

## V.    CONCLUSION

In accordance with the foregoing, the Court **DENIES** defendant's motion **without prejudice** to his making a further showing that his physical condition entitles him to compassionate release.

IT IS SO ORDERED.

|  | 00 : 00 |
|---|---|
| Initials of Deputy Clerk | CMJ |